# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 10, 2013

## STATE OF TENNESSEE v. MARTY M. CLARK

**Direct Appeal from the Circuit Court for Madison County**
**No. 12-268     Roy B. Morgan, Jr., Judge**

---

**No. W2012-02507-CCA-R3-CD  - Filed January 24, 2014**

---

A Madison County Grand Jury returned an indictment against Defendant, Marty Clark, charging him with possession of cocaine and possession of drug paraphernalia. Following a jury trial, Defendant was convicted of possession of cocaine and attempted possession of drug paraphernalia. The trial court imposed a sentence of eleven months and twenty-nine days for possession of cocaine and six months for attempted possession of drug paraphernalia to be served concurrently with each other and consecutively to an unrelated case. On appeal, Defendant argues: (1) that the evidence was insufficient to support his convictions; and (2) that the trial court erred in refusing to give the absent material witness instruction to the jury. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

George Morton Googe, District Public Defender; and Jeremy B. Epperson, Assistant Public Defender, Jackson, Tennessee, for the appellant, Marty M. Clark.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Jerry Woodall, District Attorney General; and Jody Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Background

At approximately 9:20 a.m. on October 9, 2011, Officers Jay Stanfill and Ed Cobb of the Jackson Police Department were dispatched to 283 Novy Street concerning a suspicious vehicle in the driveway of the vacant residence. When the officers arrived on the scene, they observed a silver Nissan Maxima parked beside the house with a black male in the driver's seat and a white female in the passenger's seat. The two were later identified as Defendant and Kelly Foreman.

Officer Cobb approached the car from the front of the house while Officer Stanfill approached from the back of the house. As Officer Stanfill approached the vehicle, he could see inside the car. When he was approximately a car length away, Defendant stepped out of the vehicle. Defendant had nothing in his hands at the time. Officer Stanfill asked Defendant what he and Ms. Foreman were doing, and Defendant indicated that they were waiting on his cousin, but he could not provide Officer Stanfill with a name or where his cousin was coming from. On the ground next to Defendant's feet, Officer Stanfill found a small plastic bag containing a small rock substance that appeared to be crack cocaine. He also found part of an ink pen and a piece of glass that had been fashioned into what Officer Stanfill believed was a crack pipe. The pen had a piece of a one-hundred percent copper scouring pad (as shown in collective Exhibit 5) in one end. There was also a glass tube on the outside of the pen, similar to tubes containing roses sold at convenience stores. The apparent crack pipe was lying several feet from the driver's door of the car. Officer Stanfill noted that neither the crack pipe nor the baggie of rock substance had dew on them like the dew on the surrounding grass, which raised the officer's suspicion that the objects had been just placed on the ground.

While Officer Stanfill was talking to Defendant, Officer Cobb spoke with Ms. Foreman. The car was registered in her name, and she gave Officer Cobb permission to search the vehicle. He found a copper scouring pad in the center console with a portion torn off, and there were multiple cigarette lighters and dismantled ink pens. Officer Cobb searched Ms. Foreman's purse and found a set of digital scales and batteries. He also found a long silver metal rod "which is commonly associated with pushing the Brillo and stuff in and packing the Brillo in tight to the end of the crack pipe and also getting the crack pushed down there if they need to push it down there so they can light it and smoke it."

Officer Stanfill field-tested the rock-like substance in the baggie, and it tested positive for cocaine. It was later sent to the Tennessee Bureau of Investigation Crime Lab where it was tested and determined to be 0.26 grams of cocaine.

Kelly Foreman testified that she became acquainted with Defendant two days prior to October 9, 2011, through a friend named "DJ." She and Defendant then struck up a friendship centered around smoking crack cocaine together. Ms. Foreman testified that on October 9, 2011, she had been on a "crack binge" and had been with Defendant for the entire weekend. She said that Defendant drove her 2004 Nissan Maxima to the house on Novy Street, and she and Defendant had been sitting in the car for approximately five minutes when the police arrived. Ms. Foreman noted that the house was "just a place to pull over and get high." She said that Defendant had obtained the crack cocaine approximately one hour before they stopped on Novy Street, and when police arrived, she and Defendant had been smoking it with a pipe fashioned from a pen and a glass pipe with a piece of the "Brillo" pad in it. She also said that there was cocaine in the car when the officers walked up. Ms. Foreman testified that the baggie of cocaine recovered by Officer Stanfill was consistent with the cocaine that had been in the car. She had also seen the crack pipe inside the car. She did not know how the items had gotten on the ground.

Ms. Foreman acknowledged that the digital scales in her purse were used for weighing drugs and that the lighters were used to burn the cocaine. She further acknowledged that she had a "push rod" which was the inside of a pen and that it was used to push the screen through the pipe. Ms. Foreman testified that she had purchased the "Brillo" pad, but Defendant was not with her when it was purchased.

Debra Purdy, Defendant's cousin, testified that Defendant often stayed at her house, and she saw him on a daily basis during the time period prior to October 9, 2011. Ms. Purdy testified that she never saw Defendant with Kelly Foreman or anyone named "DJ." She said that Defendant did not have a job at the time, and to her knowledge, he could not have purchased drugs because he would come to her house to eat and take a shower, and he would ask for a "cigarette or something." Ms. Purdy testified that when Defendant was around her, he did not exhibit any signs of being under the influence of any drug or intoxicant. Ms. Purdy admitted that she was a recovering addict who had been sober for twelve years. She testified that Defendant was supposed to be staying with her on October 9, 2011, but she had not seen him in two or three days. She later found out that he was incarcerated.

## II. Analysis

*Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence for his convictions of possession of cocaine and attempted possession of drug paraphernalia. When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Id*. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

Concerning possession of cocaine, it is an offense for a defendant to knowingly possess a controlled substance. Tenn. Code Ann. § § 39-17-408(b)(4); 39-17-418 (a)(4). The term "possession" encompasses both actual and constructive possession. *State v. Cooper,* 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). In order for a person to "constructively possess" a drug, that person must have "'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" *Id*. (quoting *State v. Williams,* 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)).

Viewing the evidence in a light most favorable to the State, there was sufficient proof from which a jury could find that Defendant was in constructive possession of cocaine, a controlled substance. Defendant and Kelly Foreman were sitting in Ms. Foreman's Nissan Maxima in the driveway of a vacant house when Officers Stanfill and Cobb of the Jackson Police Department approached the vehicle. When Officer Stanfill was approximately a car length from the vehicle, Defendant stepped out of the car and indicated that he and Ms. Foreman were waiting for his cousin. However, Defendant could not give the officer a name or where his cousin was coming from. On the ground next to Defendant's feet, Office Stanfill found a small plastic bag containing what was later determined to be 0.26 grams of cocaine. Officer Stanfill also found a portion of an ink pen and a piece of glass tubing that had been fashioned into what Officer Stanfill believed to be a crack pipe. He noted that the ink pen had a piece of copper scouring pad in one end. The crack pipe was lying several feet from the driver's door of the car. Officer Stanfill observed that neither the baggie of cocaine nor the crack pipe had dew on them like the surrounding grassy area, from which a jury could infer that the items were recently dropped on the ground by Defendant.

Inside the car, Officer Cobb found a copper "Brillo" pad in the center console with a portion torn off, and there were multiple cigarette lighters and dismantled ink pens. Ms. Foreman also had a set of digital scales and batteries in her purse. There was also a long metal rod which Officer Cobb noted "is commonly associated with pushing the Brillo and stuff in and packing the Brillo in tight to the end of the crack pipe and also getting the crack pushed down there if they need to push it down there so they can light it and smoke it."

Ms. Foreman testified that she had been on a "crack binge" with Defendant and that Defendant drove her car to the house on Novy Street. They had been sitting in the car approximately five minutes when police arrived. She testified that the house was "just a place to pull over and get high." Ms. Foreman testified that Defendant had obtained the cocaine approximately one hour before they stopped at the house. According to Ms. Foreman, she and Defendant had been smoking the crack cocaine when police arrived using a crack pipe fashioned from an ink pen and a glass pipe with a piece of "Brillo" pad inside. She also said that the cocaine was still in the car when the officers walked up. Ms. Foreman testified that the baggie of cocaine recovered by Officer Stanfill was consistent with the cocaine that had been in the car.

As for Defendant's conviction for attempted possession of drug paraphernalia, Tenn. Code Ann. § 39-17-425(a)(1) provides:

> Except when used or possessed with the intent to use by a person authorized by this part and title 53, chapter 11, parts 3 and 4 to dispense, prescribe, manufacture or possess a controlled substance, it is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this part.

The State must prove three elements to find a violation of this statute: (1) that the defendant possessed an object; (2) that the object possessed was classifiable as drug paraphernalia; and (3) that the defendant intended to use that object for at least one of the illicit purposes enumerated in the statute. *State v. Ostein*, 293 S.W.3d 519, 530 (Tenn. 2009). Criminal attempt requires, as relevant here, proof that a person "[a]cts with intent to complete a course of action or cause a result that would constitute the offense . . . and the conduct constitutes a substantial step toward the commission of the offense." *Id.* § 39-12-101(a)(3). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result[.]" *Id.*

-5-

In this case, the State established proof of the three factors in *Ostein*. As discussed above, Officer Stanfill found the makeshift crack pipe on the ground lying several feet from the driver's door of the car, and he found the baggie of cocaine on the ground next to Defendant's feet. Neither of the items had dew on them like the surrounding grassy area. Inside the car, Officer Cobb found a copper scouring pad in the center console with a portion torn off, and there were multiple cigarette lighters and dismantled ink pens. Along with those items, Ms. Foreman had a set of digital scales in her purse and a long silver rod commonly used to pack the "Brillo" pad and crack cocaine in the pipe. As previously noted, Ms. Foreman testified that she and Defendant had been smoking the crack cocaine with a pipe fashioned from a pen and a glass pipe with a piece of "Brillo" pad in it.

Based on our review of the evidence, we conclude that the evidence was sufficient to support beyond a reasonable doubt Defendant's convictions for possession of cocaine and attempted possession of drug paraphernalia. Defendant is not entitled to relief on this issue.

*Failure to Instruct the Jury on Absent Material Witness*

Defendant contends that the trial court erred by declining to give the jury an absent material witness instruction on a witness referred to as "DJ." We disagree. Initially, we point out that Defendant did not submit a written request for an absent material witness charge. Rule 30 of the Tennessee Rules of Criminal Procedure provides that requests for special jury instruction be in writing. *State v. Vickers*, 985 S.W.2d 1, 8 (Tenn. Crim. App. 1997); *State v. Brewer*, 932 S.W.2d 1, 15 (Tenn. Crim. App. 1996).

In any event, Defendant is not entitled to relief on this issue. A defendant has a constitutional right to "a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). A trial court has the duty to give a "complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998)(citing *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)). The denial of a request for a special jury instruction is error only when the trial court's charge does not fully and fairly state the applicable law. *State v. Cozart*, 54 S.W.3d 242, 245 (Tenn. 2001). The prosecution in a criminal case is "under no obligation to produce every possible witness." *Hicks v. State*, 539 S.W.2d 58, 59 (Tenn. Crim. App. 1976).

The pattern jury instruction for an absent material witness provides:

When it is within the power of the state or the defendant to produce a witness who possesses peculiar knowledge concerning facts essential to that party's contentions and who is available to one side at the exclusion of the other, and the party to whom the witness is available fails to call such witness, an

inference arises that the testimony of such witness would have been unfavorable to the side that should have called or produced such witness. Whether there was such a witness and whether such an inference has arisen is for you to decide and if so, you are to determine what weight it shall be given.

T.P.I. - Crim. 42.16 (15th ed. 2011). To support a missing witness instruction, the party requesting it must establish "that 'the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and that the missing witness was available to the process of the Court for trial.'" *State v. Bigbee*, 885 S.W.2d 797, 804 (Tenn. 1994) (quoting *State v. Middlebrooks*, 840 S.W.2d 317, 334-35 (1992))(internal citation and quotation marks ommitted). To justify a missing witness instruction, "the witness who was not called must not have been equally available to both parties." *See State v. Boyd*, 867 S.W.2d 330, 337 (Tenn. Crim. App. 1992); *Bolin v. State*, 472 S.W.2d 232, 235 (Tenn. Crim. App. 1971); *State v. Eldridge*, 749 S.W.2d 756, 758 (Tenn. Crim. App. 1988).

In denying Defendant's oral request for the absent material witness instruction, the trial court made the following findings:

This is a witness that might corroborate or not how the parties met and evidently nothing more than that. There was no testimony today from anyone other than this last witness, a Ms. Foreman, that that's how they were introduced, through DJ. He was a connection to some drug source but had nothing to do with this. The rest of the testimony as to what the officers observed or found that day would not relate. The witness herself, Ms. Foreman, her credibility is to be determined and that weight to be given her testimony is to be determined by the jury, they being the trier of fact in this case.

I'm looking now to 42.16(a), alternative instruction, Absent [] Material Witness. And keep in mind, both of these refer to material witness [sic]. In that TPI it refers to so-and-so being a material witness in the case, could have been called as a witness in trial, knows material facts about the case, and it goes on and on. Again, it talks about material facts, and this DJ, any reference to DJ was just limited to the possibility of how these two, these two being Ms. Foreman and the Defendant, actually became an acquaintance over a 48-hour or less period.

I'm going to agree with the State. I don't think that charge would apply in this case. I'm not going to prohibit defense counsel from making any arguments you want to make about DJ. I'm not telling you what argument that would be.

Obviously DJ is not here.  If you want to make reference to, "DJ is not here," I think you ought to be able to do that.  But as far as an instruction of some sort about some inference being created, the Court does not find that that would be appropriate under the law as I've determined it to be.

We agree with the trial court.  Defendant has not demonstrated that "DJ" was in any way a material witness in this case.  The only evidence concerning "DJ" was Ms. Foreman's testimony that she had known "DJ" for approximately six months and that he was a drug connection whom she had met through a friend at Lenny's Sub Shop.  Ms. Foreman testified that "DJ" then introduced her to Defendant at a "friend of DJ's house where [they] went to buy the drugs."  Ms. Foreman testified that she knew where DJ lived.   There was no testimony presented to show that "DJ" had any knowledge of material facts concerning the offenses in this case.

Moreover, as pointed out by the State, Defendant has not demonstrated that "DJ" was available to the process of the court for trial or that "DJ" was not equally available to both parties as Ms. Foreman testified that "DJ" is the one who introduced her to Defendant at a friend's house.  Defendant is not entitled to relief on this issue.

For the foregoing reasons, the judgments of the trial court are affirmed

_____

THOMAS T. WOODALL, JUDGE

-8-